IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

JASON CLINE,  
    Plaintiff,  
v.                                      Case No.: GJH-17-2103  
THOMAS N. O'CONNOR PLUMBING  
& HEATING, LLC,  
    Defendant.

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Jason Cline brings this case against his former employer, Defendant Thomas N. O'Connor Plumbing and Heating, LLC ("O'Connor"), for violations of federal and state law arising from O'Connor's termination of Cline's employment. *See* ECF No. 6. Currently pending before the Court is O'Connor's Motion to Dismiss, ECF No. 12, which has been fully briefed. *See* ECF No. 14, ECF No. 15. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2016). For the following reasons, Defendants' Motion to Dismiss is denied.

### I.    BACKGROUND[1]

O'Connor, a Maryland corporation, "engages in the business of plumbing and heating throughout the Maryland and DC Metro area" and "employs more than fifty (50) employees." ECF No. 6 ¶¶ 3–4. Cline began working for O'Connor in June of 2011 as a "Commercial Plumber/Mechanic." *Id.* ¶ 9. He was "successful" at O'Connor, "receiving consistently strong performance reviews, raises, and promotions during his tenure with the company." *Id.* In 2012, he was promoted to Lead Mechanic, and in January of 2014, he was promoted to Plumbing

---

[1] Unless otherwise stated, the background facts are taken from Plaintiff's Amended Complaint, ECF No. 6, and are presumed to be true.

Supervisor. *Id.* ¶¶ 10–13. These promotions came with raises and additional responsibilities. *Id.* As the Plumbing Supervisor, Cline "attended regular weekly production meetings, in which costs, labor, materials were reviewed with other members of O'Connor Plumbing Management." *Id.* ¶ 14. While employed at O'Connor, Cline "was regularly told he was doing an excellent job by Management," "received above average performance evaluations from his supervisors," "worked a full time schedule," and received bonuses. *Id.* ¶¶ 15–18.

On October 19, 2016, Cline suffered a work-related knee injury and damaged the meniscus in his right knee; he reported the injury to his supervisor that day, and immediately began to seek treatment from his doctors. *Id.* ¶¶ 19–20. After two months of modified work, on December 7, 2016, Cline provided a doctor's note to O'Connor notifying them that he had a torn meniscus in his right knee and would require surgery. *Id.* ¶ 24. O'Connor's insurance company approved Cline's surgery on February 9, 2017, and the surgery was scheduled for February 20, 2017. *Id.* ¶ 28. Cline underwent the surgery on February 20, 2017, and was on leave until April 24, 2017. *Id.* ¶¶ 29–30.

Cline was cleared to return to work on April 24, 2017, and he went to O'Connor's office and submitted his return paperwork. *Id.* ¶ 38. The next morning, April 25, 2017, one of O'Connor's managers, Bobby Farrar, called Cline into his office for a meeting with Farrar and another manager, Brian Ashby. *Id.* ¶¶ 39–40. There, Farrar told Cline that he was being demoted to the position of Mechanic. *Id.* ¶ 40. This position was a "significantly lower position" in the company, and "did not involve the same or substantially similar duties." *Id.* ¶ 42. Cline asked if he was being demoted because he filed a workers compensation claim,[2] and asked if he could "have a few days to think about the demotion." *Id.* ¶ 40. Farrar said that he "could have the time to think about it." *Id.* That same day, however, Cline received a call from Farrar who informed

---

[2] Cline does not allege that either manager responded to this question.

2

him that management had decided to terminate Cline's employment. *Id.* ¶ 43. Cline subsequently learned that Farrar had stated that Cline was "milking his workers compensation" and that Cline had "faked an injury." *Id.* ¶ 44.

On July 26, 2017, Cline initiated this suit and filed a Complaint against O'Connor. ECF No. 1. On August 4, 2017, Cline filed an Amended Complaint. ECF No. 6. In it, Cline asserted claims of: wrongful discharge in violation of public policy under Maryland's Labor and Employment Article, § 9-1105[3] (Count I), *id.* ¶¶ 48–55; unlawful interference with his FMLA rights under 29 U.S.C. § 2615(a)(1)[4] (Count II), *id.* ¶¶ 56–65; and retaliation for having taken FMLA leave under 29 U.S.C. § 2615(a)(2)[5] (Count III), *id.* ¶¶ 66–73. On September 19, 2017, O'Connor filed a Motion to Dismiss, arguing that Cline had not sufficiently pleaded any claims to which relief could be granted. ECF No. 12-2 at 2.[6] Cline opposed this Motion, ECF No. 14, and O'Connor replied, ECF No. 15.

## II. STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555 ("a plaintiff's

---

[3] "An employer may not discharge a covered employee from employment solely because the covered employee files a claim for compensation under this title." MD Code, Labor and Employment, § 9-1105.
[4] "It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a)(1).
[5] "It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2).
[6] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

3

obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do.")).

The purpose of Rule 12(b)(6) "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (citation and internal quotation marks omitted). When deciding a motion to dismiss under Rule 12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint," and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations and internal quotation marks omitted). The Court need not, however, accept unsupported legal allegations, *see Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events. *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

### III. DISCUSSION

O'Connor argues that Cline's case should be dismissed because he has not sufficiently pleaded each of his claims. The Court addresses each claim in turn.

#### A. Wrongful Discharge (Count I)

The parties do not dispute that it is in violation of public policy for an employee to be terminated solely for having filed a worker's compensation claim. *See* ECF No. 12-2 at 5. O'Connor argues, however, that Cline has not sufficiently pleaded a claim for wrongful discharge as he has not pleaded that his filing of a worker's compensation claim was the sole reason for his termination. *Id.* at 6. O'Connor points out that Maryland Code, Labor and

4

Employment, § 9-1105, which Cline relies on, provides that "[a]n employer may not discharge a covered employee from employment solely because the covered employee files a claim for compensation under this title." ECF No. 12-2 at 5–6. O'Connor points out that "Cline does not allege that the filing of the Workers' Compensation claim . . . was the **sole** reason for his termination." *Id.* at 6 (emphasis in original). O'Connor attempts to discredit the statements that Farrar allegedly made as being "without attribution" and "made at an unknown time." ECF No. 15 at 2.

Cline responds that the First Amended Complaint "unequivocally asserts that Mr. Cline was terminated solely because he filed a workers' compensation claim." ECF No. 14 at 6. Cline argues that, as this Court has held previously, he may bring a wrongful discharge claim if his termination was for multiple wrongful reasons: in this case, for filing a workers' compensation claim and for taking the accompanying FMLA leave. *Id.* at 8 (citing *Ford v. Rigidply Rafters, Inc.*, 999 F. Supp. 647, 650 (D. Md. 1998)).

Maryland recognizes a cause of action for wrongful termination in a limited number of situations. *Alder v. Am. Standard Corp.*, 432 A.2d 464, 471 (Md. 1981); *Makovi v. SherwinWilliams Co.*, 561 A.2d 179, 182–91 (Md. 1989). "The general theme running through the wrongful discharge . . . decisions . . . is the absence of any other remedy for the employee discharged in contravention of public policy. The tort was created so that the prospect of a remediless employee would not undercut the policies and goals that other laws sought to further." *Makovi*, 561 A.2d at 183. Thus, "Maryland courts have not recognized a judicial exception to the terminable at will doctrine for a violation of clear public policy where a statutory exception already exists to redress violations of that public policy." *Chekey v. BTR Realty, Inc.*, 575 F. Supp. 715, 717 (D.Md.1983).

5

In *Harris v. Housing Authority of Baltimore City*, the plaintiff brought, among other claims, a claim for wrongful termination in violation of public policy. No. WDQ-14-3395, 2015 WL 5083502 (D. Md. Aug. 26, 2015). The plaintiff argued that his termination was discriminatory under the Americans with Disabilities Act, the Rehabilitation Act, and the Civil Rights Act, and that he was also discharged for filing a worker's compensation claim. *Id.* at *7. While this Court acknowledged that "there is no cause of action for wrongful termination in violation of public policy to the extent that [plaintiff] is pleading wrongful termination on the basis of race and disability," this Court found that plaintiff had sufficiently pleaded a cause of action on the basis that he was terminated for filing a workers' compensation claim, despite the fact that he alleged that he had been fired for other wrongful reasons as well. *Id.* at *8.

*Harris* is persuasive. Cline has pleaded that he was terminated from his position shortly after receiving workers' compensation, that he was not provided with any reason for his termination, and that he learned that the individual who fired him stated that Cline had been "milking his workers compensation." ECF No. 6 ¶¶ 43–44. Assuming these facts to be true and viewed most favorably to Cline, he has plausibly alleged that he was terminated for filing a workers' compensation claim in violation of Maryland public policy. The fact that his termination may have been <u>also</u> motivated by other unlawful reasons (e.g., in retaliation for his exercise of his FMLA rights) does not preclude his claim of wrongful discharge. Thus, the Court will not dismiss Count I.

### B. Unlawful Interference with FMLA Benefits (Count II)

As to Cline's second claim, that O'Connor unlawfully interfered with his FMLA rights, O'Connor argues that "there is no allegation that Cline did not receive all of his FMLA benefits" and that "there is no specific allegation that Cline was terminated because he received FMLA

6

benefits." ECF No. 12-2 at 7–8. O'Connor also argues that "there is no allegation that Cline's rate of pay or other benefits were changed upon his return to work." ECF No. 15 at 2. Cline responds that he was entitled to be reinstated into his prior position, a right which O'Connor denied him. ECF No. 14 at 9.

An employee who takes FMLA leave "shall be entitled, on return from such leave (A) to be restored by the employer to the position of employment held by the employee when the leave commenced; or (B) to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." 29 U.S.C. § 2614(a)(1). "Equivalent terms and conditions of employments" means those with "substantially similar duties, conditions, responsibilities, privileges, and status as the employee's original position." 29 C.F.R. § 825.215 (e). The Fourth Circuit has made clear that an employee does not have an absolute right to be reinstated at his prior position, but must be offered at least an "equivalent position." *See Waag v. Sotera Defense Solutions, Inc.*, 857 F. 3d 179, 187 (4th Cir. 2017). An employer who does not comply with § 2614(a)(1) may be liable for interfering with an employee's FMLA rights. *See Ahmed v. Salvation Army*, No. CCB-12-707, 2012 WL 6761596 (D. Md. Dec. 28, 2012).

Here, taking all the factual allegations in the Amended Complaint as true and viewed in the light most favorable to Cline, the Court denies O'Connor's Motion as to Count II. Cline's Amended Complaint details his rise at O'Connor from the position of Mechanic to Plumbing Supervisor, and the difference between these positions. ECF No. 6 ¶¶ 9–13. Cline describes how his promotions from Mechanic to the Plumbing Supervisor came with pay raises and increased job responsibilities, including being "responsible for direct oversight of several job sites with significantly increased job duties" and "manag[ing] and provid[ing] oversight for crews of workers of up to 25 employees." *Id.* ¶¶ 13, 18. When he returned from his FMLA leave,

however, Cline was not offered the position of Plumbing Supervisor or an equivalent supervisor position; instead, he was told that he was being "demoted back to the position of Mechanic." *Id.* ¶ 40. Cline pleads that "[t]he demoted position of Mechanic was a significantly lower position than that of Plumbing Supervisor and did not involve the same or substantially similar duties and responsibilities." *Id.* ¶ 42. Cline has sufficiently pleaded that, upon his return from FMLA leave, he was not reinstated into his prior position or an equivalent position. Thus, he has pleaded a plausible allegation that O'Connor interfered with his FMLA benefits, and O'Connor's Motion to Dismiss is denied as to Count II.

### C. Retaliation (Count III)

As for Cline's third claim, that he was retaliated against for taking FMLA leave, O'Connor argues that Cline has not pleaded "but-for causation" or "any specific retaliatory intent on behalf of O'Connor." ECF No. 12-2 at 8. Cline responds that he "was not required to recite precise legal terminology," and that the "closeness in time" between his FMLA leave and his termination were sufficient to plead a "prima facie case of causality." ECF No. 14 at 13 (quoting in part *Greene v. YRC, Inc.*, 987 F. Supp. 2d 644, 655 (D. Md. 2013)).

In his Amended Complaint, Cline identifies Count III as being brought under 29 U.S.C. § 2615(a)(2), *see* ECF No. 6 at 12, which provides that "[i]t shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." However, Cline does not allege that he was fired for opposing an unlawful practice; rather, Cline alleges that O'Connor terminated him because "he filed for workers' compensation, and took the accompanying FMLA leave, which is a protected action under FMLA." ECF No. 6 ¶ 62. Therefore, the Court construes Count III as being brought

8

not under 29 U.S.C. § 2615(a)(2), but as an FMLA retaliation claim recognized by the Fourth Circuit.[7]

Construed as such, Cline has sufficiently alleged a claim of retaliation. An FMLA plaintiff claiming retaliation "must first make a *prima facie* showing that he engaged in protected activity, that the employer took adverse action against him, and that the adverse action was causally connected to the plaintiff's protected activity." *Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 551 (4th Cir. 2006). Cline has pleaded that he requested and took FMLA leave, and that as soon as he returned from his FMLA leave, O'Connor attempted to demote him and then terminated his employment. The close proximity of time between O'Connor's exercising his FMLA rights and his attempted demotion and termination—Cline was terminated the same day he returned from his FMLA leave—viewed in the light most favorable to Cline, demonstrate a causal connection. *See Yashenko*, 446 F.3d at 551 ("While evidence as to the closeness in time far from conclusively establishes the requisite causal connection, it certainly satisfies the less onerous burden of making a prima facie case of causality.") (internal quotations omitted). Thus, Cline has pleaded a *prima facie* claim of retaliation, and O'Connor's Motion is denied regarding Count III.

IV. **CONCLUSION**

For the foregoing reasons, O'Connor's Motion to Dismiss, ECF No. 12, is denied. A separate Order shall issue.

Date: May 15, 2018

GEORGE J. HAZEL
United States District Judge

---

[7] "While the FMLA does not specifically forbid discharging an employee in retaliation for his use of FMLA leave, 29 C.F.R. § 825.220(c) states that employers are 'prohibited from discriminating against employees or prospective employees who have used FMLA leave' and that 'employers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions, or disciplinary actions.' Courts have recognized that the FMLA provides a cause of action for retaliation." *Dotson v. Pfizer, Inc.*, 558 F.3d 284, 294–95 (4th Cir. 2009).

9